IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

WILLIAM J. VICKERS,

      Appellant,

v.                                      Case No.  5D15-3610

ANNIE D. THOMAS,

      Appellee.

_____/

Opinion filed December 22, 2017

Appeal from the Circuit Court
for Seminole County,
Jessica J. Recksiedler, Judge.

Angela C. Flowers, of Kubicki Draper, P.A.,
Ocala, for Appellant.

Jeffrey M. Byrd and Heather A. Trombly, of
Jeffrey M. Byrd, P.A., Orlando, for Appellee.

COHEN, C.J.

      William Vickers appeals a final judgment entered against him following a jury

verdict in favor of Annie Thomas. Vickers and Thomas were involved in an automobile

accident. Thomas sued Vickers, claiming bodily injuries as a result of the accident.

Vickers admitted responsibility but disputed that the accident was the cause of Thomas's

permanent injuries.[1] The jury awarded Thomas compensatory damages, including future

---

[1] Thomas had previously been involved in an automobile accident after which she
sought treatment for neck and back injuries.

medical expenses and future loss of earning capacity. On appeal, Vickers argues that the trial court abused its discretion in certain evidentiary rulings, in denying his motions for remittitur, and in denying his motion for new trial based on Thomas's counsel's improper closing argument. We affirm in part, reverse in part, and remand for a new trial or remittitur on the issue of damages for future loss of earning capacity.[2]

"Florida law restricts recovery of future medical expenses to those expenses reasonably certain to be incurred." Volusia Cty. v. Joynt, 179 So. 3d 448, 452 (Fla. 5th DCA 2015) (citing Loftin v. Wilson, 67 So. 2d 185, 188 (Fla. 1953)). At trial, Thomas presented evidence of her need for and the costs of continued palliative care, cervical surgery, and lumbar surgery. The jury awarded her $353,100 for future medical expenses. Vickers argues that the jury's award for these damages was speculative in nature because it was not "reasonably certain" that Thomas would obtain cervical and lumbar surgery.

Thomas's pain management doctor, Dr. Dunson, testified that Thomas's reasonably certain costs for continued palliative care would be between $525,000 and $850,000. Thomas's orthopedic surgeon, Dr. Masson testified that, while Thomas's condition was stable, cervical surgery was appropriate to increase her functional capacity and quality of life. He also testified that if cervical surgery was successful, there might not be a need for a follow-up lumbar surgery. However, he explained that if Thomas's disability and quality of life issues persisted despite the cervical surgery and conservative

---

[2] While certain evidentiary rulings were erroneous, such as allowing cross-examination of a medical expert with text the expert did not recognize as authoritative, the errors were harmless. See § 59.041, Fla. Stat. (2011); see also Herbello v. Perez, 754 So. 2d 840, 840 (Fla. 3d DCA 2000) (finding that erroneous evidentiary rulings did not affect outcome of trial; therefore, errors were harmless).

care, lumbar surgery would be the next reasonable step. Dr. Masson testified that cervical surgery would cost $90,000 to $120,000, and that lumbar surgery would cost $60,000 to $90,000. While courts cannot allow juries to award amounts of damages beyond what is reasonably supported by the evidence presented, see, e.g., Festival Fun Parks, LLC v. Bellamy, 123 So. 3d 684, 685–86 (Fla. 4th DCA 2013), the evidence presented in this case regarding the reasonably certain need for and costs of Thomas's palliative care alone was sufficient to support the jury's award of future medical expenses. See Metrolimo, Inc. v. Lamm, 666 So. 2d 552 (Fla. 3d DCA 1995) (upholding future medical expenses award because the amount awarded was "within the range testified to by the plaintiff's witnesses").

However, we find the evidence of Thomas's future loss of earning capacity insufficient. To establish a claim for loss of future earning capacity, a plaintiff must introduce "reasonably certain evidence that the capacity to labor has been diminished." Rasinski v. McCoy, 227 So. 3d 201, 204 (Fla. 5th DCA 2017) (quoting Hubbs v. McDonald, 517 So. 2d 68, 69 (Fla. 1st DCA 1987)). Here, the evidence presented revolved around Thomas's fear of losing her job rather than any diminished capacity to continue her employment; such fear is speculative and cannot serve as a proper basis for these damages. See Joynt, 179 So. 3d at 451. Therefore, we reverse the jury award for future loss of earning capacity and remand for the trial court either to enter a remittitur under section 768.043(2), Florida Statutes, or to grant a new trial solely on the issue of damages for loss of earning capacity. See Rasinski, 227 So. 3d at 203 (citing Truelove v. Blount, 954 So. 2d 1284, 1289–90 (Fla. 2d DCA 2007)).

Lastly, we feel compelled, as we have in the past,[3] to comment upon the closing arguments made by Thomas's counsel, Jeffrey Byrd. Leading up to the trial, Thomas had sought recovery for cervical, lumbar, and shoulder injuries allegedly arising from the automobile accident. Four days before the trial, she withdrew her claim for the shoulder injury and successfully obtained a ruling in limine to prevent discussion of the withdrawn claim. During the defense's case, Vickers presented the testimony of Dr. Hurbanis, an orthopedic surgeon specializing in shoulder surgery, who conducted a compulsory medical examination on Thomas. During closing arguments, Thomas's counsel made several comments related to Dr. Hurbanis's qualifications to testify about cervical and lumbar injuries as a shoulder specialist.

While it was appropriate to question Dr. Hurbanis's qualifications to address Thomas's injuries, the closing argument by Thomas's counsel improperly attacked Vickers's counsel's decision to hire Dr. Hurbanis as an expert in the case, based on his specialization in shoulder injuries. This occurred despite the successful motion in limine on the withdrawn shoulder injury claim. The attack on Vickers's counsel for electing to hire Dr. Hurbanis was disingenuous and improper. See Rosario-Paredes v. J.C. Wrecker Serv., 975 So. 2d 1205, 1208 (Fla. 5th DCA 2008) (noting that arguments that attack opposing counsel are not appropriate and will not be condoned). The trial court sustained Vickers's objection, but it denied his request for a curative instruction. Although the trial court incorrectly declined to give the curative instruction, an improper closing argument will not result in a new trial unless the statements are highly prejudicial, inflammatory, and improper. See Riggins v. Mariner Boat Works, Inc., 545 So. 2d 430, 433 (Fla. 2d DCA

---

[3] See, e.g., Rasinski, 227 So. 3d at 202 n.1.

4

1989) (citing <u>Decks, Inc. v. Nunez</u>, 299 So. 2d 165 (Fla. 2d DCA 1974)). Under the circumstances of this case, we find that the improper comments were not so highly prejudicial and inflammatory as to deny Vickers a fair trial. The trial court's failure to give the curative instruction was harmless on the facts of this case.[4] <u>See</u> § 59.041, Fla. Stat. (2011); <u>Bakery Assocs., Ltd. v. Rigaud</u>, 906 So. 2d 366, 367 (Fla. 3d DCA 2005).

We note that this trial occurred before our opinion in <u>Rasinski</u> issued. Thomas's counsel's closing arguments have gathered the attention of this Court and if they continue, should gather the attention of trial courts as well. We caution that the use of such improper comments, and the effect on a litigant's right to a fair trial, will lead to a new trial in the appropriate case. <u>See</u> <u>City of Orlando v. Pineiro</u>, 66 So. 3d 1064 (Fla. 5th DCA 2011); <u>Johnnides v. Amoco Oil Co.</u>, 778 So. 2d 443 (Fla. 3d DCA 2001).

AFFIRMED IN PART; REVERSED IN PART; and REMANDED.

EISNAUGLE, J., and EGAN, R., Associate Judge, concur.

---

[4] On appeal, Vickers cites to eighteen comments Thomas's counsel made during closing arguments warranting reversal for a new trial. The majority of the comments were unobjected-to, unpreserved for appeal, and failed to rise to the level of fundamental error. <u>See</u> <u>Murphy v. Int'l Robotic Sys.</u>, 766 So. 2d 1010 (Fla. 2000). Of the seven comments preserved for appeal, our ruling on the loss of future earning capacity cures three of those comments. Additionally, Vickers's position that Thomas characterized the defense as a "grand scheme" is not supported by the record.

5