IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

AUTO CLUB INSURANCE COMPANY
OF FLORIDA,

      Appellant,

 v.                              Case No. 5D15-1337

KENNETH BABIN,

      Appellee.

_____/

Opinion filed November 18, 2016

Appeal from the Circuit Court
for Marion County,
Edward L. Scott, Judge.

Douglas M. Fraley, of Molhem & Fraley,
P.A., Tampa, for Appellant.

Jeffrey M. Byrd, of Jeffrey M. Byrd, P.A.,
Orlando, for Appellee.

BERGER, J.,

     Auto Club Insurance Company of Florida (Auto Club) appeals a final judgment

entered in favor of Kenneth Babin for underinsured motorist coverage based on injuries

he suffered in an automobile accident. Auto Club argues the trial court erred when it

denied Auto Club's motion for directed verdict on the issues of future medical expenses

for low back surgery, past lost wages, and loss of earning capacity in the future.  We agree and reverse.

Babin, age 63, was injured in a multicar rear-end collision.  The accident occurred on June 14, 2010, when a car driven by Melvin Scott rear-ended the car located behind Babin, which, in turn, rear-ended Babin's vehicle.  Babin sued Scott and Auto Club, his underinsured motorist carrier.  Auto Club did not deny that Scott was negligent but disputed the amount of damages.  Babin asked to be compensated for future surgery to his lower back, for past lost wages, and for the loss of his ability to make future earnings from a scuba-diving business he had planned to start with a friend prior to his accident.

Following a jury trial, Babin was awarded $120,000 in past medical expenses, $70,000 in past lost earnings, $160,000 in future medical expenses, $72,000 in lost earning ability for future years, $15,000 for past pain and suffering, and $15,000 for future pain and suffering.  Only the damages awarded for future medical expenses, past lost earnings, and future earning capacity are in dispute.  As to those claims, Auto Club argues the trial court erred in failing to grant its motion for directed verdict.

We begin our analysis with Babin's claim for future medical expenses related to future low-back surgery.[1]  "Florida law permits the recovery of '[t]he reasonable [value] [or] [expense] of [hospitalization and] medical [and nursing] care and treatment necessarily or reasonably obtained by (claimant) in the past [or to be so obtained in the future].'" Volusia Cty. v. Joynt, 179 So. 3d 448, 452 (Fla. 5th DCA 2015) (alterations in

---

[1] Auto Club does not dispute Babin's claim for damages related to chiropractic care.

original) (quoting Fla. Std. Jury Instr. (Civ.) 501.2(b)). In support of this claim, Babin presented the deposition testimony of Dr. Robert L. Masson.

Dr. Masson testified that on March 2, 2011, he discussed with Babin that if conservative therapy failed, then his lower back would be treated with a two-level reconstruction. Dr. Masson further testified that Babin clearly had a low-back condition and that "[i]t was of a caliber that might need surgery at some point." Specifically regarding the need for surgery, Dr. Masson testified that Babin "has not clinically progressed to that level of dysfunction where I thought surgery was indicated currently." Again, he reiterated that Babin's back had not "met the surgical indices for intervention yet," and that "at this point he's doing well enough with conservative care that he does not need it right now." Dr. Masson indicated "obviously . . . his imaging represents a mess. In layman's terms, it's -- both cervical and low back, he's got a lot going on. Uh, but despite the mess, not everybody needs surgery." In the end, Dr. Masson stated that he did not have an opinion within a reasonable degree of medical probability as to whether Babin needed surgery in the future.

Auto Club insists that Babin's need for future low-back surgery was too speculative. Therefore, it was error for the trial court to allow this claim to go to the jury. We agree.

As this Court recently reiterated:

> Florida law restricts recovery of future medical expenses to those expenses "reasonably certain" to be incurred. Loftin v. Wilson, 67 So. 2d 185, 188 (Fla. 1953). Therefore, "it follows that a recovery of future medical expenses cannot be grounded on the mere 'possibility' that certain treatment 'might' be obtained in the future." White v. Westlund, 624 So. 2d 1148, 1150 (Fla. 4th DCA 1993) (citing 2 Damages in Tort Actions § 9.55(1), at 9-45 (1986)). Further, there must also

3

be an evidentiary basis upon which the jury can, with reasonable certainty, determine the amount of those expenses. Loftin, 67 So. 2d at 188 ("In every case, plaintiff must afford a basis for a reasonable estimate of the amount of his loss and only medical expenses which are reasonably certain to be incurred in the future are recoverable."). Some direct evidence of anticipated future medical expense is essential to a recovery because the amount of past medical expenses incurred does not—at least by itself—provide a reasonable basis for a jury to compute future medical expenses. See DeAlmeida v. Graham, 524 So. 2d 666, 668 (Fla. 4th DCA 1987). It is a plaintiff's burden to establish, through competent, substantial evidence, that future medical expenses will more probably than not be incurred. See Fasani v. Kowalski, 43 So. 3d 805, 812 (Fla. 3d DCA 2010) (citing Kloster Cruise Ltd. v. Grubbs, 762 So. 2d 552, 556 (Fla. 3d DCA 2000)).

Joynt, 179 So. 3d at 452. In Joynt, this Court held that a doctor's testimony that "it [was] 'reasonably possible' that Joynt will require additional surgery on her ear and that 'it would not surprise [him]' if he had to perform another surgery due to chronic drainage or hearing loss, [was] insufficient to show that these medical expenses [were] reasonably certain to be incurred in the future." Id. at 453; accord Geico Indem. Co. v. DeGrandchamp, 102 So. 3d 685, 687 (Fla. 2d DCA 2012) (finding that doctor's testimony that plaintiff would "possibly" need surgery was insufficient to support jury award of future medical expenses); Subaqueous Servs., Inc. v. Corbin, 25 So. 3d 1260, 1268-69 (Fla. 1st DCA 2010) (finding evidence insufficient to support award of future medical expenses to cover cost of surgery where plaintiff's expert "merely surmised that epidural injections or IDD therapy could be appropriate at a later juncture in [plaintiff's] treatment" and that he would not recommend surgery unless plaintiff lost a substantial amount of weight); Truelove v. Blount, 954 So. 2d 1284, 1287-88 (Fla. 2d DCA 2007) (finding testimony that plaintiff

4

*could* have a flare-up every other month and each "flare-up would require six visits" was too speculative to support future medical expenses).  Such is the case here.

The evidence presented in this case failed to establish that future surgery on Babin's low back was reasonably certain to occur.  Dr. Masson clearly testified that he had no opinion as to whether Babin would need surgery in the future.  Accordingly, it was error to allow this claim to go to the jury.  Furthermore, because Babin objected to, and the trial court denied, Auto Club's request for a special verdict form separating future chiropractic care from the expenses a jury might award for future low-back surgery, we are unable to ascertain what the jury actually awarded.  See Dep't of Transp. v. Ness Trailer Park, Inc., 489 So. 2d 1172, 1180 (Fla. 4th DCA 1986) (noting that "[h]ad the special verdict forms requested by DOT been granted, we could tell what damages, if any, were granted under existing law and which were not").  Accordingly, we are compelled to remand for a new trial on future medical expenses, excluding any evidence regarding future surgery on Babin's low back.

We next turn to Babin's claims for past lost wages and loss of future earning capacity.  The amount of an award for loss of future earning capacity should be measured by the plaintiff's diminished ability to earn income in the future, rather than the plaintiff's actual loss of future earnings. Subaqueous Servs., 25 So. 3d at 1267 (citing Auto-Owners Ins. Co. v. Tompkins, 651 So. 2d 89, 91 (Fla. 1995)).  Just as with future medical expenses, damages for the loss of future earning capacity must be established with a reasonable certainty. Id.  Specifically, the plaintiff "must demonstrate a reasonable certainty of injury and 'present evidence which will allow a jury to reasonably calculate lost earning capacity.'" Eagle Atl. Corp. v. Maglio, 704 So. 2d 1104, 1105 (Fla. 4th DCA

5

1997) (quoting W.R. Grace & Co.-Conn. v. Pyke, 661 So. 2d 1301, 1302 (Fla. 3d DCA 1995)). "Once sufficient evidence is presented, the measure of damages is the loss of capacity to earn by virtue of any impairment found by the jury and the jury must base its decision on all relevant factors including the plaintiff's age, health, habits, occupation, surroundings, and earnings before and after the injury." Miami-Dade Cty. v. Cardoso, 963 So. 2d 825, 828 (Fla. 3d DCA 2007) (quoting Pyke, 661 So. 2d at 1302). Auto Club convincingly argues Babin failed to meet his burden. While he put on sufficient evidence to establish reasonable injury, he failed to present sufficient evidence to establish a diminished earning capacity in the future.

Babin has a Bachelor's degree and a Master's degree in secondary education. Before moving to Florida, he served as a law enforcement officer and worked as a teacher. He had back surgery in 1995. After two years of rehabilitation, he returned to law enforcement as a gang officer. He retired from law enforcement in 1999 and moved to Florida where he worked as a teacher for six years. At the time of the accident, however, Babin was voluntarily unemployed. The record reflects he worked regularly until he met his girlfriend in 2006, at which time he left his job in central Florida to live with his girlfriend in Bonaire for six to eight months out of the year.

Babin testified that in the spring of 2010, he completed the bookwork to become a certified divemaster, and he intended to complete the physical portion of the exam in the fall of 2010. Around that same time, he and his girlfriend discussed selling the house in Bonaire and moving to Belize to start a scuba-diving business.

Babin claimed the Belize business was not mere idle conversation and that his responsibility was to complete the legal certification for liability purposes. Babin testified

6

that he expected to make $28,000 from the dive business "if we were a good, solid, safe operation."[2] He indicated he planned to do the dive business for the remainder of his life. Unfortunately, he was unable to dive after the accident.

Notably, Babin's inability to work as a dive master does not mean Babin was unable to work. Indeed, Babin testified that he was physically capable of training service dogs and had, in fact, contemplated such a business.[3]

In order to recover damages for lost earning capacity, Babin was required to prove, with reasonable certainty, a loss of earning capacity as a result of his injury. See Tompkins, 651 So. 2d at 90-91. This he failed to do. Like the plaintiff in Joynt, there was no evidence presented to indicate Babin was completely disabled from further gainful employment as a result of his injury. To the contrary, the record reveals he had the capacity to earn an income as a dog trainer. While Babin's testimony focused on his inability to work as a divemaster after the accident, there is simply no guarantee he ever would have worked in that field. And, even if there was testimony to support that claim, the evidence introduced to support the amount he could earn as a divemaster was purely speculative. As such, there was no reasonable evidence upon which the jury could predicate a verdict in favor of Babin on this claim.

---

[2] In an effort to substantiate the earning potential from the dive business, Babin called his friend, Kevin Smith, as a witness. Smith testified that he and his wife purchased land in Belize for vacation and retirement purposes and thought it would be a nice place to start a business. He obtained quotes to build a boat for the proposed business venture with Babin, but by the time of trial had taken no further steps to have the boat constructed. While Smith estimated that the dive business could generate $1000 to $3000 income gross per week, he admitted these figures were only a guess and that he came up with them with the help of his wife, who majored in marketing while in college.

[3] Babin testified he could train up to twenty-four service dogs per year at a rate of $800 per dog.

7

Accordingly, we reverse the jury's award on Babin's claims for future medical expenses, past lost wages, and future earning capacity and remand for new trial solely on the issue of future medical expenses. In all other respects, the final judgment is affirmed.

AFFIRMED, in part; REVERSED, in part; and REMANDED.

PALMER and EVANDER, JJ., concur.